**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AMY THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:11-cv-00177** |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Knowles** |
| | ) | |
| **AUSTIN PEAY STATE UNIVERSITY** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Defendant Austin Peay State University's Motion for

Summary Judgment ("Motion") (Doc. No. 24), filed with a Memorandum in Support (Doc. No.

25), a Statement of Undisputed Facts (Doc. No. 26), multiple supporting affidavits (Doc. Nos.

27-30), and other exhibits (Doc. Nos. 31-1 to 31-31). Plaintiff Amy Thompson filed a Response

in Opposition (Doc. No. 32), with a Memorandum in Support (Doc. No. 33), Response to

Defendant's Statement of Undisputed Facts (Doc. No. 35), Statement of Undisputed Facts (Doc.

No. 34), and several exhibits (Doc. Nos. 32-1 to 32-14). Defendant then filed a Reply (Doc. No.

39), along with a Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 41), and

several exhibits (Doc. Nos. 41-1 to 41-5). For the reasons given below, Defendant's Motion is

**GRANTED in part** and **DENIED in part**.

I.     **BACKGROUND**

      *A. Factual Background*[1]

---

[1] All facts in this section are undisputed and are taken from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 35) and Defendant's Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 41), unless otherwise noted.

1

Plaintiff was formerly a professor in the Medical Technology Program of the Allied Health Sciences ("AHS") Department with Defendant in Clarksville, Tennessee. Plaintiff's immediate supervisor during her time with Defendant was Dr. Robert Robison, Chair of AHS and Director of the Medical Technology Program. At a faculty meeting in April of 2009, Dr. Robison announced his intention to retire. The Dean of AHS, Dr. Jaime Taylor ("Dean Taylor"), did not announce a new Program Director at the April faculty meeting. Plaintiff had previously expressed interest in the Program Director position. Prior to the time of the alleged discriminatory events discussed below, Dr. Robison had supported Plaintiff's interest in becoming Program Director, although the parties dispute if or when his support ceased.

Shortly after the April 2009 faculty meeting, Plaintiff arranged a meeting with Dean Taylor to discuss the Program Director position. Plaintiff was concerned about what she believed to be an offensive comment reportedly made by Dean Taylor regarding Plaintiff's capacity or long-term willingness to perform the duties required of the Program Director while caring for her children. During the meeting, Dean Taylor denied making any such statement. Following this meeting, Plaintiff sent emails to Dean Taylor and Dr. Robison expressing concern about the alleged comment. Dr. Robison responded to her email, and in his response used the phrase "no big deal." The parties, however, dispute the context in which the phrase was used. Dean Taylor responded to Plaintiff's email by meeting with her a second time. A female employee of Defendant, Dr. Cindy Taylor, was also present at the second meeting with Dean Taylor and Plaintiff.

On July 28, 2009, Plaintiff learned that her husband was offered an opportunity to serve as a visiting professor for one year at the United States Military Academy at West Point in New York. Plaintiff was interested in residing with her husband in New York, and approached Dr.

2

Robison the next day to discuss the possibility of teaching her 2009-2010 academic year courses online. With regard to this conversation, the parties agree only that Dr. Robison told Plaintiff that teaching her courses online was not an option, and that if she could not fulfill her obligations with Defendant, she would need to submit a letter of resignation. Otherwise, the parties characterize this exchange differently.

On July 30, 2009, Plaintiff had a conversation with a male colleague, Dr. Rex Ameigh. In the course of that conversation, Dr. Ameigh acknowledged previously making a comment to another colleague regarding Plaintiff's interest in becoming Program Director. Specifically, Dr. Ameigh acknowledged that, when he was approached by Dr. Perry Scanlon regarding Plaintiff's interest in the position, Dr. Ameigh stated to Dr. Scanlon that Plaintiff might choose to step down from the Program Director position at some point in the future to spend time with her family. At the time he made the statement, Dr. Ameigh was the interim Chair of AHS.

On August 6, 2009, Plaintiff sought assistance from Defendant's Director of the Office of Affirmative Action, Sheila Bryant, who was the person responsible for handling claims of discrimination against Defendant and its employees. Plaintiff submitted a letter of resignation to Defendant on August 12, 2009. Plaintiff then filed an internal complaint against Dr. Robison and Dean Taylor on August 21, 2009, at which point Ms. Bryant began an investigation. The Office of Affirmative Action informed Plaintiff on October 21, 2009 that it had not found any acts of discrimination on the part of Defendant or its employees and that her complaint was consequently dismissed.

After her employment with Defendant ended, Plaintiff traveled with her husband to New York for the 2009-2010 academic year. Early in 2010, Plaintiff applied for a position as a professor with Defendant for the 2010-2011 academic year. Plaintiff was not granted an

3

interview for the position. Though Defendant had in the past granted three interviews for professor vacancies, in this particular instance it granted only two. Defendant formed a search committee to consider applicants for the teaching vacancy and utilized a ranking system to evaluate the employees based on criteria developed by the search committee. Plaintiff ranked as the third highest-scoring of five total applicants. The parties agree that the search committee formed to consider applicants for the vacancy did not comply with the Defendant's policy requiring that the Department Chair head the committee. The parties also agree that the search committee did not include a current student, as required by university policy. After she was not selected for an interview, Plaintiff complained to Ms. Bryant regarding the composition of the search committee, and filed a second internal complaint. Plaintiff was informed on May 18, 2010 that the Office of Affirmative Action found no discrimination and her second complaint was consequently dismissed.

### B. Procedural History

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on June 4, 2011, and received a Notice of Right to Sue on January 12, 2011. Plaintiff filed suit in federal court on February 25, 2011 (Doc. No. 1), and filed an Amended Complaint on April 29, 2011 (Doc. No. 16). The five-count Amended Complaint brings claims for gender discrimination, hostile work environment, retaliation, failure to promote, and failure to hire. (Doc. No. 16 ¶¶ 49-73.)

On April 13, 2012, Defendant filed the pending Motion (Doc. No. 24), along with a Memorandum in Support (Doc. No. 25), a Statement of Facts (Doc. No. 26), various affidavits (Doc. Nos. 27-30), and multiple exhibits (Doc. Nos. 31-1 to 31-31). On May 4, 2012, Plaintiff filed a Response (Doc. No. 32), along with a Memorandum in Support (Doc. No. 33), Response

4

to Defendant's Statement of Undisputed Facts (Doc. No. 35), Statement of Undisputed Facts (Doc. No. 34), and several exhibits (Doc. Nos. 32-1 to 32-14). Defendant then filed a Reply (Doc. No. 39), along with a Response to Plaintiff's Statement of Facts (Doc. No. 41), and several exhibits (Doc. Nos. 41-1 to 41-5) on May 7, 2012.

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or

presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## III. ANALYSIS

Defendants have moved for summary judgment as to all of Plaintiff's claims. The Court will first discuss Defendant's argument that Plaintiff's claims are barred by the applicable statute of limitations, and then discuss Defendant's arguments as to the merits of each claim.

### A. Statute of Limitations

Title VII establishes a 300-day statute of limitations for claims brought before the EEOC. 42 U.S.C. § 2000e-5(e)(1). It is undisputed that Plaintiff filed her charge with the EEOC on June 4, 2010. (Doc. No. 16 ¶ 46.) Thus, only acts committed after August 9, 2009 are actionable.

Defendant argues that its alleged discriminatory acts all pre-date August 9, 2009, except for the acts giving rise to Plaintiff's retaliation by failure to rehire claim, and Plaintiff's separate failure to hire claim. (Doc. No. 25 at 8.) Regarding Plaintiff's August 12, 2009 resignation, Defendant asserts that it is not an "action taken by Defendant," but rather an independent act of Plaintiff. (Doc. No. 39 at 2.)

6

Plaintiff responds that her gender discrimination claim and retaliation claim are timely because they relate to Defendant's alleged constructive discharge of Plaintiff on August 12, 2009. (Doc. No. 33 at 10-11.)

The Court considers Plaintiff's final day of work as the date of her alleged constructive discharge. *See Elec. Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229 (1976). Despite the fact that Plaintiff's resignation letter states an effective date of July 29, 2009, it is undisputed that Plaintiff continued her duties until August 12, 2009, and submitted her letter of resignation on that day. (Doc. No. 33 at 11.) Thus, because she ceased her employment with Defendant during the limitations period, there is genuine dispute of material fact as to whether a discriminatory act, her alleged constructive discharge, occurred within the 300-day period preceding her EEOC complaint. Therefore, summary judgment based on the statute of limitations is inappropriate for any of Plaintiff's claims to the extent they are based on her alleged constructive discharge. This includes parts of Plaintiff's gender discrimination claim and Plaintiff's retaliation claim.

Alternatively, Plaintiff asserts that her claims are timely under the "continuing violations" theory. (Doc. No. 33 at 12.) The continuing violations theory in Title VII cases generally provides that where there is "an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 2002).

However, Plaintiff's reliance on the continuing violations theory is misplaced, at least with respect to Plaintiff's failure to promote claim. The Supreme Court explained in *National Railroad Passenger Corp. v. Morgan* that failure to promote is a "discrete act" which either does or does not occur within the appropriate time period. 536 U.S. 101, 114 (2002). Here, Plaintiff's

failure to promote claim relates back to April of 2009, well outside the 300-day limitations period.

While none of Plaintiff's claims, to the extent they are based on failure to promote, are saved by the continuing violations theory, her hostile work environment claim is. As the Supreme Court stated in *Morgan*, "[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. Plaintiff has alleged that, after complaining to Dean Taylor and Dr. Robison about their alleged discriminatory comments, the nature of her relationship with her colleagues was detrimentally altered, and for the remainder of her employment she was given the "cold shoulder" by her colleagues. (Doc. No. 33 at 5-6.) Those assertions are crucial to Plaintiff's hostile work environment claim. Thus, there is a question of fact as to whether this alleged treatment continued throughout Plaintiff's employment, up to and including August 12, 2009, at which point this claim would be treated as a continuing violation coming within the 300-day limitations period. Thus, the Court finds that summary judgment based on the statute of limitations is inappropriate as to Plaintiff's hostile work environment claim.

Finally, Plaintiff argues that her remaining claims should be saved by the doctrine of equitable tolling. Plaintiff cites *Morgan* for the proposition that the 300-day statute of limitations is "subject to equitable doctrines such as tolling or estoppel." *Morgan*, 536 U.S. at 113; *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Sixth Circuit has identified five factors to consider in determining whether equitable tolling is warranted: (1) lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice, and (5) the plaintiff's reasonableness

in remaining ignorant of the particular legal requirement. *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Plaintiff makes several arguments with respect to the above factors. First, she argues that she lacked notice of the statute of limitations prior to consulting with an attorney in May of 2010. (Doc. No. 33 at 16.) Second, she cites *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992), for the proposition that constructive knowledge is imputed only where a plaintiff retains an attorney within the limitations period. (*Id.*) Third, she cites numerous examples of her diligence in pursuing her Title VII rights, including repeated complaints to supervisors and administrators, and her filing of an internal complaint. (*Id.*) Fourth, Plaintiff cites those same complaints to argue that Defendant was well aware of her grievances and not prejudiced by the lapse of the limitations period. (*Id.*)

Defendant replies that "Plaintiff knew of the steps to take to preserve her claims in August 2009 yet decided to delay filing an EEOC action until summer 2010." (Doc. No. 39 at 2.) Defendant cites an email exhibit from a colleague to Plaintiff that Defendant contends "evidences that Plaintiff: (1) Contacted a law firm about her case; (2) Was instructed to contact the EEOC; and, (3) Was advised to let the AA [Affirmative Action] office at APSU conclude its investigation before contacting the EEOC." (*Id.*) Further, Defendant argues that Plaintiff's colleague advised her to start her claim process "ASAP." (*Id.*)

In an email to an acquaintance dated August 18, 2009, Plaintiff states that she spoke to an attorney who advised Plaintiff to "get a bigger lawyer in Nashville for a case like this." (Doc. No. 37 at 9-10.) That same person apparently told Plaintiff that she should "go to the EEOC in Nashville, but suggested letting the AA office at APSU do an investigation first." (*Id.*) While this communication establishes that Plaintiff was aware that she needed to act deliberately in

9

pursuing her rights, there is no suggestion that she actually learned of the 300-day statute of limitations for Title VII claims as a result of this communication. Further, even if this constitutes actual or constructive knowledge, the Court finds that equitable tolling until that point is warranted. Thus, if Plaintiff's 300-day period began to run on August 18, 2009, the date of the email exchange, her June 4, 2010 complaint would be timely as to all claims.

The Court finds that the remaining *Truitt* factors also favor Plaintiff. She did not have constructive notice of the 300-day statute before retaining an attorney. *See Jackson*, 961 F.2d at 579. She was reasonable in remaining ignorant of the statute, at least until the email communication of August 18, 2009, as it appears this was the point when she began to contemplate pursuing legal action for what she believed to be discrimination by Defendant, and learned of the urgency with which she should do so. Further, she does to appear to have diligently pursued her rights through her various complaints to Defendant's administrative personnel, including Dr. Robison, Dean Taylor, and, eventually, Ms. Bryant. Therefore, the Court finds that equitable tolling is appropriate in this case and **DENIES** Defendant's Motion insofar as it seeks to dismiss Plaintiff's claims based on Title VII's statute of limitations.

### B. *Gender Discrimination Claim*

Plaintiff's first claim, for gender discrimination, is based four allegations: (1) she was "bypass[ed] in the promotion process based on gender," (2) Defendant subjected her to disparaging remarks based on gender, (3) she was constructively discharged based on gender discrimination, and (4) she was made to suffer a hostile work environment based on gender. (Doc. No. 16 ¶ 49.) Because the second and fourth theories are essentially a reformulation of Plaintiff's hostile work environment claim, the Court will address these two theories together

with that claim below.  Thus, the Court here addresses Plaintiff's gender discrimination claim only to the extent it relies on her lack of promotion and her alleged constructive discharge.

### 1. Failure to Promote

Defendant argues that Plaintiff's failure to promote claim must fail because the Program Director position was not to be filled until after Plaintiff was no longer employed with Defendant.  (Doc. No. 25 at 3.)  Defendant denies that the position was ever promised to Plaintiff, but insists that the position was to be filled based on whether the new AHS Chair was from the Medical Technology Program or the Radiology Program.  (*Id.* at 13.)  According to Defendant, if the new AHS Chair was someone in the Medical Technology Program, that person would automatically also serve as Program Director of Medical Technology.  (*Id.*)  Thus, Defendant argues, only if the new AHS Chair came from the Radiology Program would the Dean have discretion to appoint Plaintiff to Program Director of Medical Technology.  (*Id.*)  Because Plaintiff resigned on August 12, 2009, and the election for AHS Chair was not to occur until October 8, 2009, Defendant contends that Plaintiff was not eligible for the promotion.  (*Id.*)  Therefore, Defendant argues, it is entitled to summary judgment on that claim.  (*Id.*)

Plaintiff alleges that, in late March or early April of 2009, Dean Taylor informed her that he intended to appoint her as Program Director of the Medical Technology Program.  (Doc. No. 33 at 3.)  Plaintiff states it was her understanding that she would take over the position in December of 2009, upon the retirement of Dr. Robison.  (*Id.*)  According to Plaintiff, she was also informed by Dean Taylor that her promotion to the position would be announced at a monthly faculty meeting to be held on April 6, 2009.  (*Id.*)  Plaintiff alleges that, during that faculty meeting, Dr. Robison indeed announced his intention to retire, but Dean Taylor did not announce Plaintiff's promotion as she expected.  (*Id.*)

11

Plaintiff asserts that, immediately after the faculty meeting, she arranged a meeting with Dr. Robison to inquire as to why her expected promotion was not announced. She asserts that Dr. Robison told her that Dean Taylor had concerns about her ability to perform her responsibilities in the position as a mother with children. (*Id.* at 4.) Specifically, Plaintiff alleges Dr. Robison quoted Dean Taylor as having commented: "How long is [Plaintiff] going to keep the medical technology director position since she has three small children?" (*Id.*) Plaintiff asserts that she immediately asked Dr. Robison to report the comment to Ms. Bryant, which he refused to do. (*Id.*)

Following the meeting with Dr. Robison, Plaintiff states that she immediately arranged a meeting with Dean Taylor to discuss his alleged comment. According to Plaintiff, Dean Taylor denied making the comment, instead telling her that it was made by Dr. Robison. (*Id.*) Plaintiff testified that Dean Taylor added, "I didn't even know that you had children. What did you do, pop them out back to back to back?" (Thompson Dep. at 46.) Plaintiff testified that following this meeting, she emailed both Dr. Robison and Dean Taylor separately to discuss her concerns regarding the alleged comments. (Thompson Dep. at 49.) She testified that Dr. Robison dismissed her concerns as "no big deal." (*Id.*) Finally, as a result of the email to Dean Taylor, Plaintiff testified that a meeting was held with herself, Dean Taylor, and another employee of Defendant present, at which the alleged discriminatory comments were "acknowledged, but trivialized." (*Id.* at 120.) Plaintiff asserts that she was "expressly advised to ignore the comments and told that it was basically her problem." (*Id.* at 119, 121.)

A plaintiff with a discrimination claim based on a failure to promote must demonstrate that: (1) she is a member of a protected class, (2) she applied for and was qualified for a promotion, (3) she was considered for but not selected for the promotion, and (4) an individual

with similar qualifications who was not a member of the protected class received the job at the time the plaintiff's request for the promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

Plaintiff, a woman, is a member of a protected class and thus satisfies the first element. It is undisputed that Plaintiff met the academic qualifications for the position, and Defendant acknowledges that Plaintiff had the support of Dr. Robison and Dean Taylor for the position if the opportunity arose. (Doc. No. 35 ¶¶ 18, 19, & 24.) The Court finds this sufficient to satisfy the second element. It is disputed whether Plaintiff can fairly be characterized as being "considered for" the promotion, as she was no longer employed with Defendant at the point Defendant contends the position became available. However, because it is undisputed that Dean Taylor and Dr. Robison "supported" her for the position (*id.*), the Court finds this sufficient to conclude that she had, at some point prior to her departure, been "considered" for the potential promotion. Thus, the Court finds that there is a genuine dispute of material fact with respect to the third element. Nevertheless, Plaintiff cannot meet the fourth element, as she does not dispute that no similarly qualified male was selected for the promotion at the time her request for the promotion was denied.

However, the Sixth Circuit provides for an alternative avenue to make a *prima facie* case by presenting direct evidence of discriminatory intent. *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). Direct evidence of discrimination "requires no inferences to conclude that unlawful [discrimination] was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Taken in the light most favorable to Plaintiff, and if Plaintiff's allegations are to be believed, the statement allegedly made by either Dean Taylor or Dr. Robison is direct evidence of discriminatory intent in Defendant's failure to

13

announce Plaintiff's promotion at the April faculty meeting. Thus, Plaintiff has succeeded in making a *prima facie* showing of gender discrimination by failure to promote.

"In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that . . . [it was] not motivated by impermissible discrimination." *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)). Here, Defendant argues that the position of Program Director was not promised to Plaintiff prior to her departure, but instead depended on elections for the new AHS Chair, which were to be conducted in October of 2009, well after Plaintiff's departure. However, Plaintiff offers deposition evidence showing that the new Program Director of Medical Technology was actually selected in September, ahead of the AHS Chair election. (Robison Dep. at 84; Scanlan Dep. at 19). Thus, Plaintiff contends that Defendant's claim of the promotion being dependent upon the AHS Chair election is "factually false" and merely pretext for its discrimination against Plaintiff. (Doc. No. 33 at 27.)

Considering the allegations and evidence put forth in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff was passed over for promotion on the basis of gender discrimination by Defendant. Therefore, Defendant's Motion is **DENIED** with respect to Plaintiff's gender discrimination claim to the extent it is based on her lack of promotion.

### 2. Constructive Discharge

Defendant asserts that Plaintiff cannot support a constructive discharge claim because she voluntarily resigned from her position with Defendant. (Doc. No. 25 at 5.) Defendant contends that after learning of her husband's opportunity at West Point, Plaintiff approached Dr. Robison and informed him of the opportunity and her desire to go with her family to New York. (*Id.* at

15-16.) Defendant asserts that Dr. Robison told Plaintiff that teaching her 2009-2010 courses online was not an option, but that it was Plaintiff's "choice" to resign. (*Id.* at 16.) Defendant further insists that there is "absolutely no evidence" that Defendant created intolerable working conditions which would compel Plaintiff to resign. (*Id.* at 15.) Defendant argues instead that "all proof indicates that [Plaintiff] consistently received good job performance evaluations and recommendations for promotions." (*Id.*)

Plaintiff alleges that she was constructively discharged from her position with Defendant based on the alleged statements discussed above, her perception of receiving the "cold shoulder" from colleagues during the summer of 2009, and a conversation with Dr. Robison on July 28, 2009, in which Dr. Robison allegedly "demanded" Plaintiff's resignation. (Doc. No. 33 at 22-23.) Plaintiff states that, after her husband received an offer for a one-year teaching appointment at West Point, she approached Dr. Robison to ask him if it would be possible for her to teach her 2009-2010 classes online. (*Id.* at 22.) According to Plaintiff, "Dr. Robison refused to discuss with [Plaintiff] her options, but rather, took this opportunity to abruptly demand her resignation." (*Id.*) Thereafter, Plaintiff asserts, "Dr. Robison repeatedly ordered that [Plaintiff] provide him with her written resignation." (*Id.*) Defendant characterizes this exchange much differently, claiming that, after Plaintiff approached Dr. Robison, she was told "she must either fulfill her obligations and teach her classes, as scheduled, (i.e. on ground) or resign to allow Defendant to obtain a substitute faculty member." (Doc. No. 39 at 3.)

A constructive discharge occurs when "working conditions would have been so difficult and unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir. 1984) (citations omitted). The Sixth Circuit has established a two-prong test for analysis of constructive discharge. *See Yates v. Avco*

*Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987). First, a plaintiff must show that a reasonable employee would have believed she was being constructively discharged. *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004). Second, "a plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee." *Id.* (citing *Yates*, 819 F.2d at 636-37). "Employee resignations . . . are presumed to be voluntary. *Id.* (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999)). A resignation that appears voluntary does not constitute a constructive discharge "unless it is objectively reasonable for the employee to leave under the circumstances." *Id.* However, "when the employer forces the resignation by coercion or duress," it will not be treated as voluntary. *Id.* at 60.

It is undisputed that Plaintiff submitted a letter of resignation on August 12, 2009. However, the circumstances of the July 29, 2009 conversation between Plaintiff and Dr. Robison are unclear. As noted, Plaintiff and Defendant characterize the encounter much differently. Nevertheless, the Court finds that Plaintiff's allegations and deposition testimony, including her testimony that Dr. Robison "demanded her resignation," taken in the light most favorable to Plaintiff, present a genuine dispute of material fact as to whether a reasonable person would have felt constructively discharged as a result of the conversation. Further, Plaintiff's testimony that Dr. Robison abruptly ended the conversation, and then "badgered" her with follow-up emails requesting her resignation letter, show a genuine dispute of material fact as to whether Defendant evinced an intent to constructively discharge Plaintiff, and whether it was foreseeable to Defendant that Dr. Robison's actions would be so interpreted by Plaintiff. Further, the merits of Plaintiff's claim rest in large part upon a determination of her credibility, which is a jury function inappropriate for determination by the Court. *See Anderson*, 477 U.S. at 255.

Thus, for the reasons stated, the Court **DENIES** Defendant's Motion as to Plaintiff's gender discrimination claim to the extent it is based on her alleged constructive discharge.

### C.  Hostile Work Environment Claim

Defendant argues that Plaintiff's hostile work environment claim fails because the allegedly discriminatory comments of Dr. Robison, Dean Taylor, and Dr. Ameigh, "singularly or in the aggregate, fail to rise to the level of harassment." (Doc. No. 25 at 9.) Defendant argues that any comments regarding the potential for Plaintiff to step down as Program Director in order to spend time with her children were based entirely on the personal experiences of male colleagues. (*Id.* at 10.)  Further, Defendant cites email exhibits containing exchanges between Plaintiff and her colleagues that Defendant argues "evidence a continuing, professional and personal atmosphere during the subject time."  (*Id.* (citing Doc. Nos. 30-27 to 30-30.))  Defendant acknowledges that the alleged comment of, "What did you do, pop them out back to back to back?" is offensive, but asserts that it does not rise to the level of actionable harassment.  (*Id.* at 10).

Plaintiff alleges that she was subject to numerous discriminatory actions which she says created a "severe, pervasive, hostile and offensive work environment" which affected the terms and conditions of her employment and unreasonably interfered with her work performance. (Doc. No. 16. ¶ 55.)  Specifically, Plaintiff cites the alleged comments of Dr. Robison, Dean Taylor, and Dr. Ameigh, as well as the alleged failure of her superiors to take corrective action on her behalf.  (Doc. No. 33 at 38.)  Plaintiff also cites the "cold shoulder" atmosphere allegedly created by her complaints regarding the alleged discriminatory comments. (*Id.* at 39.)  She asserts that her working conditions became "progressively worse" to the point that she was "experiencing extreme depression, including suicidal thoughts and feelings of worthlessness."

(*Id.*)  Plaintiff argues that these alleged facts, taken together, create a genuine dispute of fact with regard to her hostile work environment claim.

To establish a prima facie case for a hostile work environment claim, a plaintiff must present evidence that: (1) she is a member of a protected class; (2) she was subject to harassment, either through words or actions, based on sex; (3) the harassment has the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).  "Actionable harassment exists if the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  The conduct must be either so severe or so pervasive that it would constitute a hostile or abusive work environment to both the actual victim and a reasonable person.  *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

In characterizing the type of conduct that gives rise to a hostile work environment claim, the Supreme Court has stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).  The Supreme Court has enumerated a list of non-exclusive factors to consider in analyzing the conduct giving rise to a hostile work environment claim, which are: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.

The alleged conduct in this case is somewhat analogous to that at issue in *Grace v. USCAR*. There, the evidence supporting the plaintiff's hostile work environment claim was: (1) the defendant referred to the plaintiff as a "dancing girl" or "call girl"; (2) the defendant ignored the plaintiff, except to make offensive comments regarding her appearance; (3) the plaintiff's boss, upon receiving her complaints, stated "Let's just try to make it through the next few months [until the end of defendant's employment]"; and (4) the defendant's behavior had caused another employee to resign. 521 F.3d at 679. The Sixth Circuit held that "the occasional comments, which may have been 'offensive utterances,' do not rise to the level required by the Supreme Court's definition of a hostile work environment in *Harris*." *Id.*

Here, based on the *Harris* factors, the Court finds that the evidence of a hostile work environment put forth by Plaintiff is insufficient as a matter of law. First, the frequency of the offensive conduct was minimal. Plaintiff's claim is largely supported by three comments occurring in April of 2009. Subsequent to those three comments, Plaintiff alleges only her perception of receiving "the cold shoulder," her perception that nothing was being done to correct the alleged discrimination, and Dr. Ameigh's July 2009 comment, as further evidence of a hostile work environment. Second, the Court finds that the April 2009 and July 2009 comments do not rise to the level of severity required by the Supreme Court for a hostile work environment claim under Title VII. The only comment that is arguably "physically humiliating" is Dean Taylor's alleged comment about Plaintiff "popping [children] out back to back to back." The other comments, while untactful and understandably offensive to Plaintiff, appear to reflect the honest views of some of Plaintiff's colleagues regarding Plaintiff's capacity to negotiate her personal and professional responsibilities. While such judgments may fairly be deemed

inappropriate in today's workplace, the Court finds that they do not rise to the level of severity described by the Supreme Court in *Harris* or *Faragher.*

Further, though Plaintiff has alleged that the offensive conduct did have detrimental effects on her work performance, the test is both subjective and objective. The Court doubts a reasonable person would experience effects similar to those allegedly experienced by Plaintiff. *See Barret v. Whirlpool Corp.*, 556 F.3d 502, 517 (6th Cir. 2009) (noting that the plaintiff's claim of receiving "the cold shoulder" could contribute to a finding of a hostile work environment, but is not, on its own, objectively severe conduct). As the Sixth Circuit has stated repeatedly, Title VII was not enacted to be "a code of workplace civility." *Grace*, 521 F.3d at 679 (citing *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 507 (6th Cir. 2001)). Further, Plaintiff has not sufficiently alleged that the conduct was so extreme as to amount to a change in the terms and conditions of her employment. The evidence put forth by Defendant supports its claim that Plaintiff maintained a cordial and professional relationship with Dr. Robison and Dean Taylor during the summer of 2009. The Court finds that the alleged conduct giving rise to Plaintiff's hostile work environment claim was not "severe or pervasive" enough to permit a reasonable jury to find that Plaintiff was subject to a hostile work environment. Defendant's Motion as to Plaintiff's hostile work environment claim is **GRANTED.**

### D. Retaliation Claim

Plaintiff's retaliation claim appears to be based on four separate theories. First, Plaintiff alleges that "Defendant adversely changed the terms, conditions, and privileges of Plaintiff's employment by denying her promotion to Program Director." (Doc. No. 16 ¶ 60.) Second, "Defendant forc[ed] Plaintiff to resign based on the hostile work environment established by Defendant's gender discrimination." (*Id.*) Third, Defendant "fail[ed] to grant Plaintiff an

interview when she applied for a position as an Assistant Professor with [Defendant] in 2010." (*Id.*) Fourth, Defendant "fail[ed] to . . . hire Plaintiff to its open Assistant Professor position in 2010." (*Id.*) The Court will address each of these theories in turn.

### 1. Denial of Promotion

Plaintiff alleges that she was denied a promotion as retaliation "because she opposed or complained of unlawful employment practices." (Doc. No. 16 ¶ 61.) However, Plaintiff does not put forth any evidence showing that the denial of her promotion was based on her complaints about the allegedly offensive conduct. Rather, Plaintiff asserts that the decision to deny her the promotion was made prior to her even learning of the offensive comments. (Doc. No. 33 at 3-4.) Plaintiff does not advance any theory, or put forth any evidence, that she was again considered for the promotion following her complaints and again denied the promotion as retaliation for those complaints. Thus, the Court **GRANTS** Defendant's Motion as to Plaintiff's retaliation claim to the extent it is based on her lack of promotion.

### 2. Forced Resignation

The Court found that there is a genuine dispute of material fact as to whether Defendant impermissibly discriminated against Plaintiff by constructively discharging her. The question here, therefore, is if there is a genuine dispute of material fact as to whether the alleged constructive discharge was in retaliation for Plaintiff's complaints regarding the allegedly offensive comments of Dr. Robison and Dean Taylor.

To establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) she engaged in a protected activity under Title VII, (2) the protected activity was known to the defendant, (3) defendant thereafter took an adverse employment action against her, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Morris v.*

*Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).  The evidence, taken in the light most favorable to Plaintiff, easily establishes the first three elements.  It is undisputed that Plaintiff complained to Dr. Robison and Dean Taylor regarding the allegedly discriminatory comments.  Complaints of gender discrimination are protected activities under Title VII.  *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000).  Because Plaintiff complained to Defendant's employees, Plaintiff has shown that Defendant knew of the protected activity. Further, if Plaintiff's proffered evidence of constructive discharge is believed, it clearly suffices as an adverse employment action.  The question then is whether the Plaintiff has created a genuine dispute of fact regarding the fourth element, causation.

    "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" had the plaintiff not engaged in a protected activity.  *Nguyen*, 229 F.3d at 563. "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."  *Id.*  It requires only that Plaintiff put forth "some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, provid[ed] it is credible" *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997)).  Plaintiff argues that, following her complaints, she received the "cold shoulder" from colleagues, and she was made to work on a daily basis in an "unpleasant," "unprofessional," "detrimental," and "hostile work environment" that became "progressively worse over time."  (Doc. No. 33 at 31.)  Plaintiff does not put forth any evidence, direct or circumstantial, other than her own bare assertions, to support those characterizations.  Further, Defendant produced evidence tending to show that Plaintiff

maintained a cordial relationship with Dr. Robison and Dean Taylor. (*See* Doc. Nos. 30-27 to 30-30.)

Nevertheless, as discussed above, viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could interpret the July 29, 2009 conversation with Dr. Robison to constitute a constructive discharge, and further find that the termination occurred in retaliation for Plaintiff's complaints of gender discrimination. Thus, Defendant's Motion as to Plaintiff's retaliation claim is **DENIED** to the extent it is based on Plaintiff's alleged forced resignation.

### 3. Retaliatory Failure to Grant an Interview and Hire

Defendant argues that Plaintiff cannot establish a *prima facie* case for retaliatory failure to hire for two reasons. First, Defendant argues that it offered the position to the top-scoring candidate, based on a "previously prepared, rubric criteria." (Doc. No. 25,\ at 19.) This, Defendant argues, cannot be fairly characterized as an "adverse action." (*Id.*) Second, Defendant insists that even if failing to interview or hire Plaintiff constitutes an adverse action, Plaintiff cannot show a causal connection between the action and her previous protected activity. (*Id.*) Further, Defendant contends that even if Plaintiff can establish a *prima facie* case of retaliatory failure to hire, "Defendant had a legitimate, non-discriminatory reason for hiring the applicant" it hired instead of her. (*Id.*) Defendant shows that "Plaintiff scored a 108 and ranked third in comparison to the top two scoring candidates, who scored 126 and 125" on Defendant's rubric. (*Id.* at 20.) Finally, Defendant argues that Plaintiff cannot show that Defendant's scoring system was pretextual.

Plaintiff claims that Defendant retaliated against her for her complaints of gender discrimination when it declined to grant her an interview or hire her after she again applied for a

position as a professor in 2010. (Doc. No. 16 ¶ 60.) She argues that the temporal proximity between her internal complaint on August 21, 2009, and Defendant's failure to grant her an interview supports an inference that Defendant's action was retaliatory. (Doc. No. 33 at 34.) She also argues that Defendant's negative reaction to her internal complaint supports an inference of retaliation. (*Id.*) Plaintiff further alleges that Defendant's Affirmative Action Officer violated university policy by failing to interview relevant witnesses during the investigation into Plaintiff's internal complaint. (Doc. No. 33 at 34.) She further asserts that Dr. Robison's testimony during the investigation contradicted his deposition testimony. (*Id.* at 35.)

As the Court summarized when discussing Plaintiff's claim for retaliation based on constructive discharge above, it is undisputed that Plaintiff engaged in a protected activity and that Defendant knew Plaintiff did so. The Court must then determine if there is a genuine dispute of material fact as to whether Defendant's failure to interview and hire Plaintiff amounts to an "adverse employment action," and if so, whether it was caused by Plaintiff's protected activity.

Typically, to establish an "adverse employment action," a plaintiff must show "a materially adverse change in the terms and conditions of [plaintiff's] employment." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (citing *Hollins v. Atl. Co.*, 188 F.3d 652 (6th Cir. 1999)). The Supreme Court has stated that "a tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761. Although the Sixth Circuit has not appeared to address when a failure to hire can constitute an adverse action, other circuits have provided some guidance. In *Velez v. Janssen Ortho, LLC*, the First Circuit commented that

24

"claims of retaliation in the failure-to-hire context are . . . rare."  467 F.3d 802, 803 (1st Cir.

2006).  The court held that, for purposes of a Title VII retaliation claim, "the establishment of an

'adverse employment action' requires a showing that (1) the [plaintiff] applied for a particular

position (2) which was vacant and (3) for which she was qualified.  In addition, of course, she

must show that she was not hired for that position."  *Id.* at 803.  Here, Plaintiff easily satisfies

these elements.  There is no dispute that Plaintiff applied for an open professor position or that

she was qualified, as evidenced by her previous employment with Defendant and positive

evaluations referenced above.  Therefore, the Court will proceed to consider the causation

element of her retaliation claim.

Plaintiff alleges only temporal proximity and Defendant's "negative reactions" with

respect to the causation element to make her *prima facie* case of retaliation.   "The law is clear

that temporal proximity, standing alone, is insufficient to establish a causal connection for a

retaliation claim."  *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007)

(citations omitted).  Further, *Boyd v. Hayes Health Care Agency*, the case on which Plaintiff

relies for "negative reactions" proposition, is factually dissimilar and inapposite to this case.  *See*

671 F.Supp. 1155, 1165-66. (W.D. Tenn. 1987).  However, in discussing pretext, Plaintiff has

cited to several pieces of evidence which the Court finds to be relevant to the question of

causation.  First, Plaintiff puts forth evidence supporting its claim that "the search committee

responsible for selecting the interviewees was comprised of individuals whom had been

interviewed . . . in connection with [Plaintiff's] 2009 internal complaint."  (Scanlan Dep. at 86-

87; Plaintiff's Aff. ¶ 10; Doc. No. 33 at 36.)  Second, Plaintiff presents undisputed evidence

showing that the composition of the committee violated university policy requiring that a student

representative serve on the committee, and that the committee be headed by the Chair of the

AHS. (Scanlan Dep. at 89.) Third, Plaintiff asserts that a committee member "admitted [in his deposition] that changes were made to the rubric subsequent to the scoring of applicants." (Scanlan Dep. at 114; Doc. No. 33 at 36.)

Plaintiff's evidence of pretext on the part of the Defendant suffices to establish her *prima facie* case. Having found that Plaintiff established a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. *See Tuttle*, 474 F.3d at 320 (citing *McDonnell Douglas Corp.* 411 U.S. at 802). "The plaintiff must . . . demonstrate that the proffered reason was not the true reason for [Defendant's] . . . decision." *Id.* (citation omitted). Here, Defendant easily meets its burden by proffering evidence regarding its applicant scoring system, and showing that Plaintiff ranked third among applicants. Thus, Plaintiff must establish that Defendant's justification is merely pretext for a retaliatory motive.

The Court finds that the evidence of irregularity within the hiring committee discussed above is sufficient to meet this burden. There is a genuine dispute of material fact as to why the Defendant failed to follow its own policies with respect to hiring, and why it deviated from its customary practice of granting three interviews. Viewing the allegations and evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find that Defendant's justification for its failure to hire Plaintiff was pretextual. Therefore, the Court **DENIES** Defendant's Motion as to Plaintiff's retaliation claim to the extent is based on the failure to interview and hire.

### E. Failure to Promote

The Court previously found that there is a genuine dispute as to material fact as to whether Plaintiff was denied a promotion as a result of Defendant's impermissible gender-based

discrimination. *Supra*, § B.  Plaintiff's failure to promote claim in Count Four mirrors her gender discrimination claim to the extent it is based on a lack of promotion.  (Doc. No. 16 ¶¶ 49, 66.)  However, to the extent it is based on retaliation for Plaintiff's engaging in protected activity, this claim mirrors Plaintiff's retaliation claim under the same theory, which was analyzed in § D, *supra*.  Accordingly, Defendant's Motion is **DENIED** with respect to Plaintiff's failure to promote claim to the extent that claim is based on gender discrimination, and **GRANTED** with respect to Plaintiff's failure to promote claim to the extent it is based on retaliation for protected activity.

   *F.  Failure to Hire*

   Count Five of Plaintiff's Complaint alleges that "Plaintiff was denied selection for the Assistant Professor position . . . based upon her gender and/or previous complaints of gender discrimination against Defendant."  (Doc. No. 16 ¶ 69-73.)  The Court construes this claim as combining both the theories of discriminatory failure to hire and retaliatory failure to hire.  The retaliatory failure to hire theory is redundant, as it was also presented within Plaintiff's retaliation claim.  Thus, the analysis from § D applies, and Defendant's Motion is **DENIED** with respect to Plaintiff's failure to hire claim to the extent that it is based on failure to hire in retaliation for Plaintiff engaging in protected activity.  However, Plaintiff has not put forth any evidence of failure to hire based solely on her sex, and does not advance any arguments regarding a sex-based failure to hire claim in her Response.  Thus, the Court finds there is no genuine dispute of material facts as to whether Defendant failed to hire Plaintiff on account of sex.  Thus, Defendant's Motion is **GRANTED** as to Plaintiff's failure to hire claim to the extent it is based Plaintiff's sex.

**IV. Conclusion**

For the reasons stated, Defendant's Motion is (**GRANTED in part**), with respect to Plaintiff's hostile work environment claim, Plaintiff's gender discrimination claim to the extent it is based on Plaintiff's theory of hostile work environment, Plaintiff's retaliation claim to the extent it is based on Plaintiff's theory of hostile work environment, Plaintiff's retaliation claim to the extent it is based on Defendant's failure to promote, Plaintiff's failure to promote claim to the extent it is based on retaliation for Plaintiff's protected activity, and Plaintiff's failure to hire based on sex claim.

Defendant's Motion is (**DENIED in part**), with respect to Defendant's statute of limitations argument, Plaintiff's gender discrimination claim to the extent it is based on Defendant's failure to promote, Plaintiff's gender discrimination claim to the extent it is based on Plaintiff's constructive discharge, Plaintiff's retaliation claim to the extent it is based on constructive discharge, Plaintiff's retaliation claim to the extent it is based on Defendant's failure to interview and hire Plaintiff,  Plaintiff's failure to promote claim to the extent it is based on gender discrimination, and Plaintiff's failure to hire claim to the extent it is based on retaliation for Plaintiff's engaging in protected activity.

It is so ORDERED.

Entered this the ____24th_____ day of August, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT